**In the Matter of DILBERT'S QUALITY SUPERMARKETS, INC., Debtor-Respondent-Appellee.**

**The PETITION of IRMA M. REALTY CORP., Petitioner-Appellant.**

**No. 5, Docket 30347.**

United States Court of Appeals Second Circuit.

Argued Oct. 4, 1966.

Decided Nov. 28, 1966.

Samuel Kirschenbaum, Brooklyn, N. Y. (Sylvan D. Freeman, and Dreyer & Traub, Brooklyn, N. Y., on the brief), for petitioner-appellant.

Harold Unterberg, New York City (Abbie Goldstein, David M. Perlmutter, and Unterberg & Unterberg, New York City, on the brief), for debtor-appellee.

Daniel A. Shirk, New York City (Joseph Jaspan, Brooklyn, N. Y., and Daniel Waxman, New York City, on the brief), for trustee.

Before SMITH, HAYS and FEINBERG, Circuit Judges.

3. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

J. JOSEPH SMITH, Circuit Judge:

Irma M. Realty Corp. (Irma), as the claimed assignee of a mortgage on realty in which Dilbert's Quality Supermarkets, Inc. (Dilbert's), a debtor in reorganization in a Chapter X proceeding in the United States District Court for the Eastern District of New York, was a tenant, moved in the reorganization proceedings for permission to continue the prosecution in the Supreme Court of the State of New York of a mortgage foreclosure action. The District Court, Matthew T. Abruzzo, Judge, denied the motion, and enjoined Irma from disturbing Dilbert's possession and title. Irma appeals under Sec. 121 of Title X of the Bankruptcy Act (11 U.S.C. § 47). We find no error and affirm the order.

Dilbert's operated a chain of supermarkets in the Eastern District of New York. On April 17, 1957 it entered into a lease with Flushing #1 Corp. of a one story building in Flushing, New York, for a term of 21 years for use as a food supermarket, at a percentage of gross sales against an agreed minimum rent plus water and sewer charges and any increase in real property taxes over the base year 1956–1957.

On November 21, 1962 Dilbert's filed a petition under Chapter XI of the Bankruptcy Act, continuing to operate the business as a debtor in possession. On petition of the Securities and Exchange Commission the proceeding was on March 14, 1963 transferred to Chapter X, and a trustee was appointed.

On July 6, 1964 an order was entered confirming a plan of reorganization and retaining jurisdiction over Dilbert's assets. On July 28, 1964 an order was entered affirming the lease. This lease contained a provision making it "subject and subordinate to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises form a part and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self operative and no further instrument shall be required by any mortgagee." On March 20, 1962, Flushing Project #1, along with other corporations, as mortgagors executed and delivered two purported mortgages to Webb & Knapp, Inc. as mortgagee. Among the property covered by these instruments was the debtor's leasehold. On that same day, Webb & Knapp assigned one mortgage to General Investors Company and the other to Mastan Company Incorporated. On June 1, General Investors assigned its mortgage to Mastan who, on July 13, 1964, assigned both mortgages to Bankers Life & Casualty Company. The latter, on March 5, 1965, assigned both mortgages to Irma.

On March 29, 1965, Irma, as mortgagee, instituted a foreclosure proceeding in the New York Supreme Court and named, among other defendants, the debtor-tenant Dilbert's. In its answer on April 30, 1965, Dilbert's pleaded the following affirmative defenses: full payment of the mortgage debt; the interference by the foreclosure action with the jurisdiction of the federal court in the Chapter X proceeding and the need for an application for permission to continue; a fraudulent conspiracy designed to destroy the leasehold.

On June 7, 1965, Irma applied to the reorganization court for leave to continue prosecution of the mortgage foreclosure action. After several adjournments, Judge Abruzzo scheduled a hearing on November 16, 1965. On October 18 the Court of Appeals denied Irma's petition for a writ of prohibition, or in the alternative, for a writ of mandamus assuming that the November hearing would be held as scheduled. In his opinion following the hearing Judge Abruzzo stated:

"the purpose of the hearing was twofold: (1) to determine whether or not Irma had the right to continue its foreclosure proceeding in the State Court against Dilbert's, and (2) to determine whether or not the defenses raised by Dilbert's were meritorious."

By order dated January 14, 1966 Judge Abruzzo denied Irma's motion to prosecute the foreclosure action and ruled, among other matters, that the lease was

an asset of the debtor and within the exclusive jurisdiction of the federal court and that Irma was the owner, not the mortgagee, of the leased premises.

Irma's appeal is based on three claims:

(1) That the District Court lacked jurisdiction to enjoin the foreclosure proceeding because no property of the debtor was involved.

(2) That the plan of reorganization, "deemed consummated" August 24, 1964, ended on that date the jurisdiction of the District Court over the property of the debtor, including the lease.

(3) That the order is an abuse of discretion.

■ 1. At the outset, it is clear that the reorganization court had jurisdiction to determine whether it had jurisdiction to enjoin the foreclosure. 6 Collier Bankruptcy (14th ed. 1965) Sec. 3.12. Its determination that it did have such jurisdiction to enjoin the foreclosure was correct. Its jurisdiction is grounded on the actual or constructive possession of the debtor's property. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940). Provisions of Chapter X (11 U.S.C. §§ 516(4), 548) grant power to stay foreclosure actions brought to enforce liens against the property of the debtor. The lease to Dilbert's is property of the debtor within the jurisdiction of the reorganization court. Callaway v. Benton, 336 U.S. 132, 142, 69 S.Ct. 435, 93 L.Ed. 553 (1949). This is so whether it be labeled an interest in realty or a "chattel real" as appellant urges. The foreclosure action seeks, under the subordination language of the lease, to extinguish the debtor's interest.

■ 2. The contention that adoption of the reorganization plan ousted the court of jurisdiction must be rejected. The reorganization court may retain jurisdiction of the debtor until the final decree. See generally 6A Collier Bankruptcy (14th ed. 1965) Sec. 11.13. By its order of August 25, 1964 the court expressly reserved jurisdiction "to hear and determine any and all questions as to the title to and possession of the assets and property vested or revested pursuant to this order, and the character and extent of such assets." As indicated above, the lease, specifically confirmed by order of July 28, 1964, was an asset of the corporation in reorganization.

■ 3. Under the circumstances of this case we hold that the court did not abuse its discretion in deciding to pass on the validity of the lease and mortgage claims. When reorganization has been completed and the new corporation is fully functioning as an economic unit, a court should not attempt to keep it indefinitely under the judicial wing. North Am. Car Corp. v. Peerless Weighing and Vending Mach. Corp., 143 F.2d 938, 940 (2d Cir. 1944). Here, however, the claimed default was during administration, on July 14, 1964 two weeks prior to affirmance of the lease. Jurisdiction was properly retained by the court to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation. Compare In re Pittsburgh Terminal Coal Corp., 183 F.2d 520 (3d Cir. 1950), cert. denied 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654; In re New York, New Haven & Hartford RR Co., 169 F.2d 337, 340 (2d Cir.), cert. denied, Mulcahy v. New York, N. H. & H. R. Co., 335 U.S. 867, 69 S.Ct. 138, 93 L.Ed. 412 (1948). Much remained to be done before final decree could be entered—determination of intercompany claims, participation of classes of creditors, confirmation of other leases. The lease in question was essential to the functioning of the corporation in reorganization. Serious claims were made of irregularities in the purported creation and transfer of the mortgage liens, foreclosure of which might operate to frustrate a substantial portion of the plan of reorganization. The court was not unfamiliar with the tangled affairs of Zeckendorf and Webb & Knapp from its supervision of these bankruptcy proceedings, and the testimony before it here justified its refusal to permit the foreclosure to proceed in

the state courts. Appellant has chosen not to attack the order on the merits, relying on the attack on jurisdiction. The record supports the court's determination.

The order appealed from is affirmed.