In the Matter of LEEDS BUILDING PRODUCTS, INC., Debtor.

ZAHN ASSOCIATES, INC., Plaintiff,

v.

LEEDS BUILDING PRODUCTS, INC., Defendant.

Bankruptcy No. A91–81896–WHD.
Adv. No. 93–6388A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 3, 1993.

See also 141 B.R. 265.

Bruce W. Moorhead, Jr., David L. Balser, Long, Aldridge & Norman, Atlanta, GA, for plaintiff.

Frank B. Wilensky, David B. Kurzweil, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for debtor/defendant.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on the cross Motions for Summary Judgment, filed by the defendant Leeds Building Products, Inc. (hereinafter "Debtor") and the plaintiff Zahn Associates, Inc. (hereinafter "Zahn"). The issues involved herein arise in an adversary proceeding commenced by Zahn as a Complaint on Promissory Note. The Court, however, does not reach the merits of these Motions as it declines to exercise jurisdiction over this proceeding for the reasons set forth below.

### Statement of Facts

On December 8, 1992, this Court signed an Order confirming the Debtor's Second Amended and Restated Plan of Reorganization (hereinafter "Plan"). The Plan required the Debtor to enter into a trust indenture (hereinafter "Indenture") in order to make a distribution to unsecured creditors over a ten year period. This Indenture, with Zahn as trustee, was to be funded by a promissory note (hereinafter "Note") in the principal amount of $1,200,000.00, payable in 96 equal monthly installments. For various reasons which the Court will not address in this Order, the appointment of Zahn as trustee and its subsequent posting of bond did not occur before the first payment was due on January 21, 1993. In fact, certain administrative matters were not settled until March of 1993, after which time the Debtor made its January and February payments into the trust.

The controversy before the Court, however, involves the payment due March 21, 1993, which the Debtor actually made on April 28, 1993, thirty-eight days late. It is Zahn's position that the Debtor, by being late on this payment, is in default of its obligations under the Indenture. As such, Zahn accelerated payments due on the Note,[1] and notified the Debtor of this development by letter dated May 5, 1993. Zahn then commenced this adversary proceeding on June 4, 1993, seeking judgment in the amount of the Note's unpaid principal and other relief. Without getting into the specifics of the defense, the Debtor responded to the Complaint by arguing that the parties had mutually departed from the terms of the Indenture, thereby preventing Zahn from insisting upon strict compliance. Both parties proceeded to file their Motions for Summary Judgment, bringing this matter to the Court's attention.[2]

### Discussion

As a threshold issue, the Court must decide whether it has or should exercise jurisdiction over this proceeding. Neither the Debtor nor Zahn have raised this issue, but the Court addresses it on its own initiative. *See Commercial Bank v. Price (In re Notchcliff Assocs.)*, 139 B.R. 361, 369 (Bankr.D.Md. 1992). Until a decision is made on this issue, it is not necessary to consider the actual merits of this dispute.

It has been settled law for many years that a court should play a limited role in the affairs of a reorganized debtor. Under pre-Code law, the Second Circuit, in an oft quoted passage, advised against a court's

---

1. In accelerating the Note, Zahn acted pursuant to section 5.01 of the Indenture dated December 21, 1992, which provides in part as follows:

   In case of one or more of the following Events of Default shall have occurred and be continuing:

   (1) default in the payment of any installment of principal on the Note as and when the same shall become due and payable, and continuance of such default for a period of 30 days;

   . . . . .

   then and in each and every such case, the then unpaid balance of the principal of the Note shall become immediately due and payable. *See* Complaint, Exhibit A at § 5.01.

2. To this point, judicial activity in this proceeding has been limited to administrative matters and a consent order. As such, this Court's participation has been minimal. The submission of these Motions, however, marks the first time that the Court has had the opportunity to fully consider the matters involved within this proceeding.

postconfirmation involvement, stating as follows:

> We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization. Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, *it should be the objective of courts to cast off as quickly as possible all leading strings* which may limit and hamper its activities and throw doubt upon its responsibility. It is not consonant with the purposes of the Act, or feasible as a judicial function, for the courts to assume to supervise a business somewhat indefinitely.

*North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir.1944) (emphasis added) (citations omitted); *see also Claybrook Drilling Co. v. Divanco, Inc. (In re Divanco, Inc.)*, 336 F.2d 697, 700–01 (10th Cir.1964). Courts addressing this issue under the current Bankruptcy Code have reached similar conclusions. Of course, a bankruptcy court does not lose all jurisdiction once a chapter 11 plan has been confirmed. *See* 11 U.S.C. § 1142; *Official Unsecured Creditors' Comm. v. Siskind (In re Erie Hotel Joint Venture)*, 137 B.R. 165, 170 (Bankr.W.D.Pa. 1992); *Service Decorating Co. v. Travelers Ins. Co. (In re Service Decorating Co.)*, 105 B.R. 859, 861 (N.D.Ill.1989). Nevertheless, its role is limited to matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law. *Goodman v. Phillip R. Curtis Enter. (In re Goodman)*, 809 F.2d 228, 233 (4th Cir.1987); *Pioneer Inv. Servs. Co. v. Cain Partnership, Ltd. (In re Pioneer Inv. Servs. Co.)*, 141 B.R. 635, 640 (Bankr.E.D.Tenn.1992); *A.R.E. Mfg. Co. v. United States (In re A.R.E. Mfg. Co.)*, 138 B.R. 996, 998–99 (Bankr.M.D.Fla.1992); *Erie Hotel*, 137 B.R. at 170; *Service Decorat-*

*ing*, 105 B.R. at 861. In addition, issues and disputes that arise postconfirmation normally do not come within a bankruptcy court's jurisdiction. *See Central States, Southeast and Southwest Areas Pension Fund v. J.T. Gerken Trucking, Inc. (In re J.T. Gerken Trucking, Inc.)*, 10 B.R. 203 (Bankr.N.D.Ohio 1981). Once the confirmation order is entered, the court no longer acts *in loco parentis* over any and all squabbles and disputes that may arise in the affairs of the reorganized debtor.

■ After reviewing the facts of the case at hand, the Court concludes that this proceeding does not come within its limited postconfirmation jurisdiction. In particular, this adversary does not concern the execution or implementation of the Plan, or the interpretation of its provisions. Section 4.5 of the Plan required the Debtor to make certain payments to the unsecured creditors. In order to give effect to this requirement, the Debtor executed a promissory note and a trust indenture with Zahn as trustee. In so doing, the Debtor has implemented this provision of the Plan, and there is no question as to its interpretation.

Furthermore, the matters involved in this proceeding do not involve the application of bankruptcy law in any way. The dispute itself arises out of a contract, and by its own terms the obligations are subject to the laws of the State of Georgia. Specifically, Georgia law applies to decide if a default has occurred, if there was a mutual departure from the original contract terms, and if a proper acceleration of the Note has taken place. In their briefs, the parties have relied almost exclusively upon Georgia law in making their arguments. Therefore, it is clear that this matter does not require the application of bankruptcy law. *Cf. Pioneer Inv. Servs.*, 141 B.R. at 642 (relief sought predicated entirely on bankruptcy matters and did not require application of state law). Finally, the Court notes that all the events in question occurred after the confirmation of the Plan. As such, it is not proper for this Court to exercise jurisdiction over this adversary proceeding.[3]

---

**3.** In its Complaint, Zahn cites to a provision of the confirmation Order which purports to grant the Court jurisdiction over certain postconfirmation matters. The existence of this provision is

# Conclusion

In conclusion, the Court does not reach the merits of the Motions for Summary Judgment currently before it. Subject matter jurisdiction does not exist over this postconfirmation dispute since it involves contractual matters, governed entirely by state law, and does not involve the implementation or interpretation of any provisions of the Plan. Accordingly, Zahn's Complaint on Promissory Note is hereby DISMISSED for lack of jurisdiction. Nothing in this Order shall be construed as preventing the parties from bringing their dispute before an appropriate forum.

**IT IS SO ORDERED.**

---

not objectionable since bankruptcy courts are allowed to include provisions retaining jurisdiction over certain limited matters. *In re Tri–L Corp.*, 65 B.R. 774, 778 (Bankr.D.Utah 1986). The Court, however, will interpret the language of such a provision very narrowly to ensure that its role after confirmation remains limited. Furthermore, a court cannot establish jurisdiction merely by inserting such a provision into the confirmation order. This Court has no power to reserve jurisdiction beyond what Congress has given or what is necessary to effectuate the plan of reorganization. *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 969 (Bankr.S.D.Tex.1993). The matter *sub judice* does not meet this criteria.