**FIRST WESTERN SBLC, INC., Appellant,**

v.

**MAC–TAV, INC., Appellee.**

**No. CIV. A. 98–3752 (MLC).**

United States District Court,
D. New Jersey.

April 19, 1999.

Ira C. Kaplan, Law Offices of Ira C. Kaplan, P.C., Hackensack, NJ, for Appellant.

Linda J. Schwimmer, Markowitz and Zindler, Lawrenceville, NJ, for Appellee.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on appeal of the Order of the United States Bankruptcy Court for the District of New Jersey dated June 30, 1998. For the reasons expressed herein, the Order of the bankruptcy court is affirmed.

## BACKGROUND

Mac–Tav, Inc. ("Mac–Tav") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on December 8, 1993. (Appellee's Br. at 3.) Mac–Tav owns a tavern located at 1704 F Street, South Belmar, New Jersey (the "Property"). (*Id.*) Appellant First Western, SBLC, Inc. ("First Western") retains a mortgage on the Property. (Appellant's Appendix ("App.") at 31.) The bankruptcy court entered an Order (the "Confirmation Order") confirming the reorganization plan (the "Confirmed Plan") of Mac–Tav on April 22, 1996. (*Id.* at 1–37.) The bankruptcy court incorporated the Confirmed Plan into the Confirmation Order. (*Id.* at 3.)

The Confirmation Order stated that "the Court will retain jurisdiction over the implementation and interpretation of this Order." (*Id.*) The Confirmation Order also provided that the bankruptcy court would retain jurisdiction:

> i. to enable the Debtor to consummate the Plan of Reorganization and to resolve any disputes arising with respect thereto....
>
> x. to make such Orders as are necessary or appropriate to carry out the provisions of this Plan to the extent authorized by § 1142 of the Bankruptcy Code....
>
> xi. to hear any other matter not inconsistent with the Bankruptcy Code.

(*Id.* at 25–26.)

Mac–Tav and First Western entered into a Stipulation of Settlement ("Stipulation"), which the bankruptcy court also incorporated into both the Confirmation Plan and the Confirmation Order. (*Id.* at 31–36.) The Stipulation provided that Mac–Tav would remit monthly mortgage payments of $349.81 to First Western. The Stipulation also stated that in the event of default, the full mortgage owed by Mac–Tav, as well as a deficiency lien, would become due. (*Id.* at 35.) First Western could then proceed with a foreclosure action in state court and Mac–Tav would not "in any way frustrate the foreclosure action or sale of the property." (*Id.*) Mac–Tav had a 7-day grace period on all its responsibilities and an additional 10-day period to cure any defaults. (*Id.*)

Mac–Tav bounced a mortgage check that was due in January, 1998. (Appellant's Br. at 5.) Thomas P. McCann, the President of Mac–Tav, alleges that First Western did not return the check to Mac–Tav and that he believed the check had been redeposited. (App. at 41: Certif. of Thomas P. McCann dated 4–7–98 ("McCann Certif.") ¶ 10.) First Western alerted Mac–Tav that First Western was proceeding with a state foreclosure action based on Mac–Tav's failure to remit payments for February and March, 1998. (*Id.,* Ex. D.) Mac–Tav provided proof that it had paid the February, March and April mortgage payments. (*Id.,* Ex. E.) First Western then informed Mac–Tav that Mac–Tav had bounced the check due in January, 1998. (*Id.,* Ex. F.) Mac–Tav quickly delivered a replacement check to cover the January payment. (*Id.* ¶ 10.)

Mac–Tav then filed with the bankruptcy court a Motion to Compel First Western to comply with the Confirmed Plan. (App. at 38.) The bankruptcy court reopened the case. (*Id.* at 84.) In response, First Western filed a motion for an order declaring that the bankruptcy court was without jurisdiction to address Mac–Tav's alleged default. (*Id.* at 86.) After hearing oral argument, the bankruptcy court determined that it had jurisdiction over Mac–Tav's motion and ordered First Western to comply with the Confirmed Plan by not proceeding with the foreclosure action on the Property. (App. at 240: Order dated 6–30–98.) First Western filed a timely notice of appeal. (App. at 241.)

First Western argues that the bankruptcy court lacked jurisdiction over Mac–Tav's Motion to Compel. (Appellant's Br. at 7.) According to First Western, a bankruptcy court should play a limited role in the affairs of a

reorganized debtor, and a state court should interpret the Stipulation. (*Id.* at 9–14.) First Western also maintains that if the bankruptcy court had jurisdiction, it should have abstained and that the court abused its discretion by not enforcing the express terms of the Stipulation. (*Id.* at 15.)

Mac–Tav argues that the bankruptcy court had jurisdiction to decide the Motion to Compel. (Appellee's Br. at 8–9.) Mac–Tav notes that the Confirmation Order states that "the Court will retain jurisdiction over the implementation and interpretation of this Order" and asserts that the Motion to Compel concerned interpretation of the Stipulation which was incorporated into the Confirmation Order. (*Id.* at 10–11.) Mac–Tav contends that the bankruptcy court could not have abstained because First Western did not file a motion for abstention. (*Id.* at 14–15.) Finally, Mac–Tav asserts that the bankruptcy court did not abuse its discretion by ruling that Mac–Tav had not violated the Confirmed Plan. (*Id.* at 14.)

### STANDARD OF REVIEW

■■■ This Court must accept the bankruptcy court's findings of fact unless those findings are clearly erroneous. *In re Reid,* 757 F.2d 230, 233 (10th Cir.1985). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quotation omitted). The fact that a reviewing court could have decided the matter differently does not render a finding of fact clearly erroneous. *See* Fed. R. Bankr.P. 8013; *Anderson,* 470 U.S. at 573–74, 105 S.Ct. 1504. To the extent that a question presented before the bankruptcy court is one of law, we must exercise plenary review. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1222–23 (3d Cir. 1989). Where there are mixed questions of law and fact, this Court must break down these questions and apply the appropriate standard to each component. *Id.* In the instant proceeding, the bankruptcy court's rulings concerning jurisdiction and absten-

tion raise questions of law and will be reviewed *de novo.* We will address the proper standard for determining whether the bankruptcy court properly interpreted the Confirmed Plan when we address the issue on its merits.

### DISCUSSION

*I. Jurisdiction*

■■■ District courts have original jurisdiction over: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11; and (4) proceedings related to a case under Title 11. 28 U.S.C. § 1334; *see also United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 555 (3d Cir.1999) (*"Gryphon"*) (noting that an analysis of post-confirmation jurisdiction should begin with 28 U.S.C. § 1334). The bankruptcy court, by virtue of referral by the district court, has jurisdiction over cases falling under these categories. *See* 28 U.S.C. § 157(a)-(b). A proceeding fitting within any of the categories is within the bankruptcy court's jurisdiction and, since the fourth category is the broadest, a court "need only determine whether a matter is at least related to the bankruptcy." *Donaldson v. Bernstein,* 104 F.3d 547, 552 (3d Cir.1997) (quoting *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991)).

■■■ A matter is related to a chapter 11 case if it " 'could conceivably have any effect on the estate being administered in bankruptcy.' " *Gryphon,* 166 F.3d at 556 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (creating what is known as the *Pacor* test)). "Certainty, or even likelihood, is not a requirement." *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d at 264. A matter may also be considered related to a chapter 11 case if the resolution of the matter "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Gryphon,* 166 F.3d at 556 (quoting *Belcufine v. Aloe,* 112 F.3d 633, 636 (3d Cir.1997)).

Our research has not provided a definitive answer as to whether the *Pacor* test applies

after a plan has been confirmed. The reference to any conceivable effect on the "estate" suggests that *Pacor* may not apply because a debtor's estate ceases to exist after a plan of reorganization has been confirmed by the bankruptcy court. *See* 11 U.S.C. § 1141(b) ("[T]he confirmation of a plan vests all of the property of the estate in the debtor."). Courts have attempted to balance the need to retain jurisdiction post-confirmation with the need to end the bankruptcy process. *See generally Eubanks v. Esenjay Petroleum*, 152 B.R. 459, 463–64 (E.D.La.1993).

The Third Circuit has stated in dictum that "the jurisdiction of bankruptcy courts must be confined within appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case." *Donaldson*, 104 F.3d at 553; *see also North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir.1944) (deploring the tendency of district courts to "keep reorganized concerns in tutelage indefinitely"). The Third Circuit also noted that some courts have held that the act of confirmation changes the *Pacor* test to mean "significantly affect consummation of the plan as confirmed" but the court of appeals declined to determine the precise standard. *Donaldson*, 104 F.3d at 553 (citing *In re Haws*, 158 B.R. 965, 970 (Bankr. S.D.Tex.1993)). We note, however, that the Third Circuit recently applied the *Pacor* test when deciding that a claim for postconfirmation fees brought by the United States Trustee was "related to" a case under Title 11. *Gryphon*, 166 F.3d at 556. The court did not address the particular issue of post-confirmation jurisdiction.[1]

The United States District Court for the Eastern District of Louisiana relied on the *Pacor* test, as adopted by the Fifth Circuit in

*In re Wood*, 825 F.2d 90, 93 (5th Cir.1987), when holding that a bankruptcy court may retain jurisdiction over any proceeding that "conceivably could affect the debtor's ability to consummate the confirmed plan." *Eubanks*, 152 B.R. at 464 (Sear, C.J.). The United States Bankruptcy Court for the District of Delaware has adopted this test as well. *See MAI Sys. v. C.U. Tech.*, 178 B.R. 50, 52 (Bankr.D.Del.1995) (Balick, C.J.) (noting that the language of 28 U.S.C. § 1334 does not limit its broad jurisdictional grant to pre-confirmation proceedings); *TWA v. Karabu Corp.*, 196 B.R. 711, 714 (Bankr.D.Del. 1996).

Courts that take a narrower approach to this issue generally accept that a bankruptcy court's jurisdiction continues post-confirmation at least "to protect its [confirmation] decree, to prevent interference with the debtor's plan of reorganization, and to otherwise aid in its execution." *See In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d 922, 924 (2d Cir.1966); *Walnut Assocs. v. Saidel*, 164 B.R. 487, 492 (E.D.Pa.1994); *In re H & L Developers*, 178 B.R. 71, 76 (Bankr.E.D.Pa. 1994); *In re Cinderella Clothing Indus.*, 93 B.R. 373, 376 (Bankr.E.D.Pa.1988); *see also In re Leeds Bldg. Prod., Inc.*, 160 B.R. 689, 691 (Bankr.N.D.Ga.1993) (stating that bankruptcy court's role post-confirmation is limited to matters involving the execution, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law).

■ This Court declines to address whether the *Pacor* test, or the *Eubanks* post-confirmation variant, should apply because we find that even under the narrower approach, the bankruptcy court had jurisdiction over Mac–Tav's Motion to Compel.[2] The

---

1. The bankruptcy court in the instant proceeding relied on *Pacor* as well. (*See* App. at 202: Tr. of Oral Arg. dated 6–17–98 ("Tr.") at 16.)

2. We pause to note that this Court has concerns with the breadth of the *Eubanks* post-confirmation test. The test's emphasis on the effect of a debtor's ability to consummate the confirmed plan could theoretically result in jurisdiction over any claim for damages involving the debtor. In *In re H & L Developers*, 178 B.R. at 76, the debtor argued that the court had jurisdiction because the dispute could affect the funding of

the reorganization plan. The bankruptcy court rejected the argument and noted that "accepting this argument would lead to the retention of jurisdiction over any dispute in which the plaintiff is a reorganized debtor in the midst of performing a reorganization plan which provides for the payment of creditors over time from post-confirmation income." *Id.* We agree with that court's conclusion that such a result would appear to conflict with the need to end the "tutelage" of the bankruptcy court. *See North Am. Car. Corp.*, 143 F.2d at 940.

bankruptcy court was required to interpret the Confirmation Plan to determine whether Mac–Tav had defaulted on its mortgage obligations to First Western. Consequently, the bankruptcy court had jurisdiction to "protect its [confirmation] decree." *In re Dilbert's Quality Supermarkets, Inc.*, 368 F.2d at 924; cf. *In re Leeds Bldg. Prod., Inc.*, 160 B.R. at 691 (court ruled that it did not have jurisdiction over complaint on promissory note where note was not incorporated into reorganization plan). Accordingly, we will affirm the decision of the bankruptcy court that it had jurisdiction over this matter.[3]

## II. Abstention

■ First Western argues that the bankruptcy court should have abstained under 28 U.S.C. § 1334(c)(2). (Appellant's Reply Br. at 9.) A bankruptcy court must abstain from hearing a proceeding under the following conditions:

(1) a timely motion is made;

(2) the proceeding is based upon a state law claim or state law cause of action;

(3) the proceeding is related to a case under Title 11 but does not arise under Title 11 or a case under Title 11;

(4) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and

(5) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

■ It is undisputed that First Western did not file a motion asking that the bankruptcy court abstain. (*See* Appellant's Reply Br. at 9) (noting that First Western did request abstention at the conclusion of its brief); (Tr. at 13–14). We find that the filing of a timely motion is a prerequisite to a court abstaining under § 1334(c)(2). *See In re Celotex*, 124 F.3d 619, 627 n. 4 (4th Cir.1997) (refusing to address argument that the district court should have abstained pursuant to § 1334(c)(2) because party seeking abstention waived any right to invoke the mandatory abstention provision by failing to make an appropriate motion); *In re Rabzak*, 79 B.R. 966, 967 n. 5 (Bankr.E.D.Pa.1987) (noting that a motion is the appropriate vehicle for presenting argument that court should abstain pursuant to § 1334(c)(2)). Accordingly, we will affirm the bankruptcy court decision not to abstain.[4]

## III. Ruling Prohibiting First Western from Proceeding with Its Foreclosure Action

■ First Western argues that the bankruptcy court erred by determining that Mac–Tav had not defaulted pursuant to the terms of the Stipulation. (Appellant's Br. at 15.) We review the bankruptcy court's interpretation of the Confirmation Plan under the

3. Mac–Tav also argues that the reservation of jurisdiction within the Confirmation Plan itself confers bankruptcy court jurisdiction over this matter. We will not reach that issue. However, we note that courts generally have found that such a reservation does not confer jurisdiction. *See, e.g., Walnut Assocs. v. Saidel*, 164 B.R. at 494–95 ("A reservation of jurisdiction beyond what is necessary to effectuate the plan is beyond the power of the bankruptcy court.").

4. Mac–Tav also argues that the bankruptcy court could not have abstained under 28 U.S.C. § 1334(c)(2) because this matter was a core proceeding. (Appellee's Br. at 15.) Our finding that First Western's failure to file a timely notice prevented the application of mandatory abstention precluded our having to determine whether this matter is non-core, an additional requirement of § 1334(c)(2).

Assuming *arguendo* that the Court were compelled to decide the issue, we would rule that the instant matter is a core proceeding. The matter concerns the interpretation of the Confirmation Plan and may be considered a core matter under either "matters concerning the administration of an estate" or "confirmation of plans." *See* 28 U.S.C. § 157(b)(2)(A), (b)(2)(L); *In re Morning Treat Coffee Co.*, 77 B.R. 62, 63 (Bankr.M.D.La. 1987) (a proceeding to interpret the provisions of a plan of reorganization is a core matter under § 157(b)(2)(L)); *In re Vincent*, 68 B.R. 865, 869 (Bankr.M.D.Tenn.1987) (finding that disputes arising from orders confirming reorganization plan are matters affecting the administration of the estate); *In re Franklin Computer Corp.*, 60 B.R. 795, 802 (Bankr.E.D.Pa.1986) (same); cf. *In re TransAmerican Natural Gas Corp.*, 127 B.R. 800, 804 (S.D.Tex.1991) (finding that dispute concerning post-confirmation settlement agreement was not core proceeding because it did not call for interpretation of the reorganization plan).

abuse of discretion standard. *See In re Weber,* 25 F.3d 413, 416 (7th Cir.1994) (rejecting argument that confirmation plan is essentially a contract between the debtor and creditors and that the bankruptcy court's interpretation should therefore be subject to *de novo* review; holding instead that bankruptcy court's interpretation of a confirmed plan should receive deferential review); *In re Terex Corp.,* 984 F.2d 170, 172 (6th Cir.1993) (bankruptcy court's interpretation of confirmed plan should be accorded full deference); *In re Ranch House of Orange–Brevard, Inc.,* 773 F.2d 1166, 1168 (11th Cir. 1985) (expressing reluctance to disturb a bankruptcy court's judgment interpreting a confirmation order); *United States v. White Farm Equip. Co.,* 157 B.R. 117, 119 (N.D.Ill.1993) (bankruptcy court's interpretation of confirmed plan should be accorded full deference); *In re Smouha,* 136 B.R. 921, 925 (S.D.N.Y.1992) (clearly erroneous standard applies where bankruptcy court has construed its own prior order).

■ We conclude that the bankruptcy court's ruling that First Western was not entitled to proceed with its foreclosure action was not clearly erroneous. The bankruptcy court heard counsel for Mac–Tav argue that the Confirmation Plan stated that Mac–Tav had ten days to cure default and that the plan therefore implicitly required First Western to provide notice of default. (Tr. at 28.) The bankruptcy court noted that First Western did not return the bounced check to Mac–Tav or try to redeposit the bounced check and that Mac–Tav quickly delivered the missing payment after being notified by First Western. (Tr. at 30, 32–33.) Based on this evidence, the bankruptcy court found that the Confirmation Plan had "sufficient flexibility" to prevent First Western from foreclosing on the Property based on the January 1998 bounced check. (*Id.* at 32.) After reviewing all the evidence, we are not "left with the definite and firm conviction that a mistake has been committed." *Anderson,* 470 U.S. at 573, 105 S.Ct. 1504. Accordingly, we will affirm the bankruptcy court's ruling that First Western was not

entitled to proceed with its foreclosure action.